**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

                v.

JOSE VALENZUELA,
            *Defendant-Appellant.*

No. 06-30398

D.C. No.
CR-04-00442-ALH

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
March 9, 2007—Portland, Oregon

Filed August 3, 2007

Before: Ronald M. Gould, Richard A. Paez, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Gould

9303

## COUNSEL

Gerald Needham, Assistant Federal Public Defender, Portland, Oregon, for appellant Jose Valenzuela.

Thomas H. Edmonds, Assistant United States Attorney, Portland, Oregon, for appellee United States of America.

## OPINION

GOULD, Circuit Judge:

United States Sentencing Guidelines § 2K2.1(b)(5) (2005) enables a district court to increase a defendant's base offense level by four if the defendant possessed or used a firearm in connection with another felony offense. Application Note 15[1] to § 2K2.1(b)(5) precludes such an enhancement when the other felony offense involved a firearms trafficking or firearms possession offense. Here, Jose Valenzuela ("Valenzuela") used a shotgun to embolden his possession and sale of stolen property. Valenzuela appeals the district court's enhancement of his sentence under § 2K2.1(b)(5) arguing that his other felony offense was a firearms trafficking or possession offense. We have jurisdiction under 28 U.S.C. § 1291, we disagree with Valenzuela, and we affirm the district court's sentence.

## I

On August 31, 2004, at about 10:30 a.m., Officer Araiza ("Araiza") saw Valenzuela driving a motor vehicle in Woodburn, Oregon. Araiza knew Valenzuela had a suspended driv-

---

[1]The relevant Application Note in the 2005 version of the Sentencing Guidelines was 15, however it was listed as Application Note 18 in prior versions of the Sentencing Guidelines, and Application Note 14 in the 2006 Sentencing Guidelines.

er's license, was wanted for parole violations, and was a suspect in several recent burglaries and vehicle thefts. Araiza stopped Valenzuela, and Officer Tony Rodriguez ("Rodriguez") responded to assist.

While Araiza was speaking with Valenzuela on the driver's side, Rodriguez approached Valenzuela's vehicle from the passenger side, stopping at a point where he could see the driver's side floorboard. On that floorboard, Rodriguez spotted .22 caliber shells. Rodriguez then saw Valenzuela reach down to the floorboard, where Rodriguez saw a pistol-grip. Rodriguez immediately ordered Valenzuela to put his hands in the air and to exit the vehicle. After Valenzuela was arrested, Rodriguez found a pistol-grip shotgun on the driver's side floorboard. Inside the vehicle and its trunk, the police officers also found several gun holsters, a gun case, a handgun, several rifles and bb guns, a duffel bag, clothing, a wallet, a camcorder, a backpack, and other shooting equipment.

After being advised of his rights, and waiving them, Valenzuela told the officers that: (1) about one hour before he was stopped, he had committed a burglary where he obtained the firearms and property in his vehicle; (2) after the burglary he sold a stolen firearm holster and a stolen .22 caliber rifle to two different friends; and (3) he was "on his way to get rid of the rest of the property" when he was stopped.

On March 6, 2006, Valenzuela pled guilty to being a felon in possession of a firearm. Sentencing took place on June 5, 2006. The Government argued that the pistol-grip shotgun that Rodriguez found near Valenzuela's feet emboldened him to commit the crime of sale or attempted sale of stolen property, or possession of stolen property. Valenzuela maintained that the burglary and the sale and possession of stolen firearms were not distinct in conduct or time sufficient to support the four-level enhancement. The district court applied

§ 2K2.1(b)(5),[2] increasing Valenzuela's base offense level by four. The district court sentenced Valenzuela to eighty-seven months, and Valenzuela timely appealed.

## II

We must determine the proper standard of review for Valenzuela's argument. Valenzuela contends, raising this argument for the first time on appeal, that Application Note 15 precludes the district court from applying § 2K2.1(b)(5) because the other felony offense that he committed was a firearms trafficking or possession offense.

If a defendant does not raise an objection in the district court, but does so on appeal, we review that argument for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 730-36 (1993); *United States v. Santiago*, 466 F.3d 801, 803 (9th Cir. 2006). Under the plain error standard, we will affirm Valenzuela's sentence unless there has been: (1) error, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Recio*, 371 F.3d 1093, 1099-1100 (9th Cir. 2004). However, we review "the district court's interpretation of the Sentencing Guidelines de novo." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005).[3]

---

[2]Both Valenzuela and the Government, and the relevant sentencing documents in this case refer to § 2K2.1(b)(5) as the guideline provision in question. The relevant provision in the 2006 Sentencing Guidelines is § 2K2.1(b)(6), but the amendment that modified the 2005 version of § 2K2.1(b)(5), Amendment 691, was not effective until November 1, 2006. *See* U.S. Sentencing Guidelines Manual supp. to app. C 177 (2006). Because Valenzuela was sentenced before the effective date of Amendment 691, § 2K2.1(b)(5), and all applicable commentary of the 2005 Guidelines apply to and control this appeal.

[3]De novo review also applies to the argument that Valenzuela raised before the district court that the § 2K2.1(b)(5) enhancement should not apply because there was no break in conduct or time between the burglary, which included the taking of the firearms and other property, and the subsequent sale of the rifle and holster.

## III

This case, one of first impression for us in interpreting § 2K2.1(b)(5), presents four sub-issues: (1) the definition of "another felony offense" in § 2K2.1(b)(5); (2) whether Application Note 15 to § 2K2.1(b)(5) precludes the use of firearms trafficking and possession offenses as "another felony offense" for enhancement under § 2K2.1(b)(5); (3) the test for determining whether a defendant's other felony offense is a firearms trafficking or possession offense; and (4) whether the district court plainly erred by enhancing Valenzuela's sentence under § 2K2.1(b)(5). We address each issue in turn.

**[1]** In the 2005 Sentencing Guidelines Manual, § 2K2.1(b)(5) reads in pertinent part: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." *Id.*

We have previously defined the terms "use," "possession," and the phrase "in connection with." In *United States v. Polanco*, 93 F.3d 555 (9th Cir. 1996), we applied the United States Supreme Court's definition of "use" in *Bailey v. United States*, 516 U.S. 137 (1995),[4] and held that "use" in § 2K2.1(b)(5) " 'requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense.' "[5] *Polanco*, 93 F.3d at 565 (quoting *Bailey*, 516

---

[4]In *Bailey*, the Supreme Court defined the term "use" in the context of 18 U.S.C. § 924(c)(1). 516 U.S. at 138.

[5]In *Bailey*, the Supreme Court provided a non-exhaustive list of examples that satisfy the "active employment" test for "use": "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire, a firearm." *Id.* at 148. Conversely, the Supreme Court detailed that "storage" or "mere possession of a firearm . . . at or near" a crime site does not constitute use, nor would a defendant's concealment of a firearm nearby so it could be used in case there was a confrontation. *Id.* at 149.

U.S. at 143). We stressed that " 'the inert presence of a firearm, without more, is not enough to trigger' " the "use" clause of § 2K2.1(b)(5). *Id.* (quoting *Bailey*, 516 U.S. at 143).

**[2]** In *United States v. Routon*, 25 F.3d 815 (9th Cir. 1994), we defined the term "possession," in § 2K2.1(b)(5), stating that "the prosecution will have to make a greater showing than a defendant's mere possession of a firearm." *Id.* at 819. We held that possession requires "that the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated—*i.e.*, had some potential emboldening role in—a defendant's felonious conduct" to obtain a sentence enhancement under § 2K2.1(b)(5). *Id.* And in *Polanco*, we held that the phrase "in connection with" in § 2K2.1(b)(5) "requires proof of a 'connection' between the use or possession of the firearm and the underlying offense." *Polanco*, 93 F.3d at 565-66.

**[3]** We have not, however, previously defined the term "another felony offense" for § 2K2.1(b)(5) purposes. Application Note 4 defines "[f]elony offense" as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.4. This definition, however, literally would seem to allow a sentence enhancement for another felony offense that is a lesser included offense of the offense of conviction, or for felony offenses that are the same offense as the predicate offense. Many courts addressing this issue have rejected the position that "another felony offense" applies to any felony offense. *See United States v. Lloyd*, 361 F.3d 197, 200 (3d Cir. 2004) (reasoning that to allow a sentence enhancement under § 2K2.1(b)(5) for "any" felony "would make little sense"); *United States v. Fenton*, 309 F.3d 825, 827 (3d Cir. 2002) (same); *United States v. Sanders*, 162 F.3d 396, 400 (6th Cir. 1998) (reasoning that to allow a sentence enhancement for a state law offense based on the same conduct as the federal predicate offense would render "the word

'another' . . . superfluous, and of no significance to the application of" § 2K2.1(b)(5) (footnote omitted)); *United States v. Szakacs*, 212 F.3d 344, 350 (7th Cir. 2000) (same).

**[4]** To resolve this problem, some of our sister circuits have adopted the *Blockburger*[6] test to determine if the second offense is "another felony offense." *See United States v. Navarro*, 476 F.3d 188, 196 (3d Cir. 2007); *United States v. Blount*, 337 F.3d 404, 408 (4th Cir. 2003); *see also Lloyd*, 361 F.3d at 204 (applying the *Blockburger* test to determine if assault and felon in possession of a firearm are the same offense); *United States v. Emerson*, 432 F. Supp. 2d 128, 139 (D. Me. 2006) (applying the *Blockburger* test as one part of a three-part analysis to determine if Emerson committed another felony offense for § 2K2.1(b)(5) enhancement purposes). The *Blockburger* test, originally applied in the double jeopardy context, provides that two offenses are separate if they both require proof of an element that the other does not. *See Blockburger*, 284 U.S. at 304. Using this test, a court would ask if the other felony offense and the firearms offense each contain an element different from the other. If they do, then the second felony offense may be used as "another felony offense" to enhance a defendant's sentence under § 2K2.1(b)(5).

Other courts have required that there be a separation of time or conduct between the firearms offense and the other felony offense. *See Fenton*, 309 F.3d at 828; *Szakacs*, 212 F.3d at 351; *United States v. McDonald*, 165 F.3d 1032, 1037 (6th Cir. 1999), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369, 389 (6th Cir. 2002); *Sanders*, 162 F.3d at 400. These cases involved an unarmed defendant who broke into a pawn shop or licensed firearms shop and stole firearms and other items. In each case, the defendant's predicate felony was felon in possession of a firearm, and the Government sought to use the burglary, where

---

[6]*Blockburger v. United States*, 284 U.S. 299 (1932).

the defendant stole the firearm(s) in the first place, to enhance the defendant's sentence under § 2K2.1(b)(5). These cases held that because there was no distinction in time or conduct between the burglary and the defendant's possession of a firearm taken from that burglary, the sentence could not be enhanced using § 2K2.1(b)(5). *See Fenton*, 309 F.3d at 828; *McDonald*, 165 F.3d at 1037; *Sanders*, 162 F.3d at 400.

Although the concerns expressed by our sister circuits in *Fenton*, *Szakacs*, *McDonald*, and *Sanders* are significant, we believe that our precedents defining the terms "use" and "possession" for § 2K2.1(b)(5) accomplish the same goal, that a district court will apply a sentence enhancement under § 2K2.1(b)(5) only if there is a separation in time or conduct between the other felony offense and the predicate felony. Indeed, there must be some separate conduct or distinction in time for a defendant to have "used" a firearm within the meaning of § 2K2.1(b)(5). That is, as we explained in *Polanco*, a defendant must actively employ a firearm in connection with another felony. 93 F.3d at 565-66. Likewise, the "possession" of a firearm implicates § 2K2.1(b)(5) only if it had some potential to embolden the separate felonious conduct, such as if an armed defendant burglarized a pawn shop. *See Szakacs*, 212 F.3d at 351 (concluding that "a defendant who steals a firearm and then . . . robs the liquor store down the street . . . could receive an enhancement"). Thus, we need not explicitly adopt the separation in time or conduct element from *Fenton*, *Szakacs*, *McDonald*, and *Sanders* because we already recognize such limits in our interpretation of "use" and "possession" as employed in § 2K2.1(b)(5).

**[5]** However, we find persuasive the cases adopting the *Blockburger* test to determine initially if the other felony offense is a distinct felony from the predicate firearms offense. Applying the *Blockburger* test will prevent a sentence enhancement for a felony offense that is the same offense, or a lesser included offense, of the defendant's predicate felony. We hold that in applying § 2K2.1(b)(5), a district

court should use the *Blockburger* test to ensure that the predicate firearms felony and the other felony offense are separate offenses. *See Navarro*, 476 F.3d at 196; *Blount*, 337 F.3d at 408. Then, the district court must determine if the defendant used or possessed the firearm in connection with the other felony offense.[7]

## IV

**[6]** Apart from this general standard, Application Note 15 restricts the type of felony offenses that a district court may use to enhance a defendant's sentence under § 2K2.1(b)(5). Application Note 15 states:

> As used in subsections (b)(5) and (c)(1), "another felony offense" and "another offense" refer to offenses other than explosives or firearms possession or trafficking offenses. However, where the defendant used or possessed a firearm or explosive to facilitate another firearms or explosives offense (*e.g.*, the defendant used or possessed a firearm to protect the delivery of an unlawful shipment of explosives), an upward departure under § 5K2.6 (Weapons and Dangerous Instrumentalities) may be warranted.

U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.15.

---

[7]Because we so hold, Valenzuela's argument that there was no break in conduct or time between the burglary of the firearms and property and the subsequent sale of the rifle and holster, necessarily fails. As we previously stated, we think the requirement from *Polanco* that Valenzuela must have "actively employed" the firearm, 93 F.3d at 565, or that he must have possessed the firearm in a way that potentially emboldened the other felony offense, *see Routon*, 25 F.3d at 819, serve the same purpose as the separation in time and conduct element from our sister circuits. Thus, we analyze Valenzuela's use or possession of the firearm under our established precedent. *See* discussion *infra* Section VI.

It is well known that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). When interpreting the Sentencing Guidelines, we apply "the rules of statutory construction." *United States v. Robinson*, 94 F.3d 1325, 1328 (9th Cir. 1996). The plain meaning of unambiguous language in a guideline provision controls. *Id.*

**[7]** Application Note 15 is explicit: firearms trafficking and possession offenses cannot be used as "another felony offense" to enhance a defendant's sentence under § 2K2.1(b)(5). A plain reading of Application Note 15 answers the second question in the affirmative, a defendant's sentence may not be enhanced under § 2K2.1(b)(5) if the other felony offense is a firearms trafficking or possession offense.[8]

## V

How then may a court differentiate between those offenses that are firearms trafficking or possession offenses, and those that are not? We adopt the test applied by the Eighth Circuit in *United States v. English*, 329 F.3d 615 (8th Cir. 2003): an offense is a firearms possession or trafficking offense if it "contains, as an element, the presence of a firearm." *Id.* at 618.[9]

---

[8]Our holding is in accord with our sister circuits that have considered the same issue. *See, e.g., Navarro*, 476 F.3d at 192; *United States v. Lindquist*, 421 F.3d 751, 755 (8th Cir. 2005); *United States v. Boumelhem*, 339 F.3d 414, 427 (6th Cir. 2003); *Blount*, 337 F.3d at 409.

[9]We note, however, that if a prosecutor asserted that a § 2K2.1(b)(5) enhancement should follow from another felony that did not include the element of firearms possession or trafficking, but the court viewed the offense as fundamentally a firearms possession or trafficking offense, the court might be justified in disallowing the enhancement. However, that question is not presented in this case and can be reserved for another day.

**[8]** In sum, we adopt a three-part test for a district court to apply when considering a sentence enhancement under § 2K2.1(b)(5). First, the predicate felony and the other felony offense that the prosecution proffers at sentencing, must be separate felony offenses under the *Blockburger* test. *See Navarro*, 476 F.3d at 196; *Blount*, 337 F.3d at 408.

**[9]** Second, the district court must determine if the other felony offense is a firearms trafficking or possession offense by asking whether the other felony offense contains the possession or sale of a firearm as an element. If it does, then that other felony offense is a firearms possession or trafficking offense, and cannot be used to enhance a sentence under § 2K2.1(b)(5).

**[10]** Third, the district court must decide if the defendant used or possessed the firearm in connection with the other felony offense. A defendant used the firearm if he actively employed it. *See Polanco*, 93 F.3d at 565. A defendant possessed a firearm if it "had some potential emboldening role in . . . a defendant's felonious conduct." *Routon*, 25 F.3d at 819. There must be a " 'connection' between the use or possession of the firearm and the underlying offense." *Polanco*, 93 F.3d at 565-66. If all three requirements are satisfied, a district court may enhance a defendant's sentence under § 2K2.1(b)(5).

## VI

Applying this framework to the facts of Valenzuela's case, we hold that the district court properly enhanced Valenzuela's sentence four levels under § 2K2.1(b)(5).

The Government sought a § 2K2.1(b)(5) sentence enhancement for Valenzuela's use of a pistol grip shotgun to embolden his possession and sale of a stolen firearm and a stolen firearm holster, and his possession and attempted sale of the other stolen property in his vehicle. The Government

identified two Oregon state criminal offenses that prohibit this conduct: (1) Oregon Revised Statutes § 164.055(1)(a), possession of stolen property;[10] and (2) Oregon Revised Statute § 164.055(1)(c), selling stolen property.[11] We analyze a sentence enhancement under § 2K2.1(b)(5) for each offense in turn.

As stated earlier, the elements of Valenzuela's predicate felony, felon in possession of a firearm are: (1) being a convicted felon (2) in possession (3) of a firearm. *See* 18 U.S.C. § 922(g)(1). Pertinent to the facts of Valenzuela's conduct, the most basic elements of the Oregon crime of possession of stolen property are: (1) theft (2) of property (3) valued at more than $200.

---

[10]Oregon Revised Statutes § 164.055(1)(a) states:

> A person commits the crime of theft in the first degree if . . . the person commits theft as defined in ORS 164.015 and . . . [t]he total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $750 or more in any other case . . . .

*Id.* (2005).

Section 164.015, defines theft. In pertinent part, that section states: "A person commits theft when, with intent to deprive another of property . . . the person . . . [t]akes, appropriates, obtains or withholds such property from an owner thereof; or . . . . [c]ommits theft by receiving as provided in ORS 164.095 . . . ." Or. Rev. Stat. §§ 164.105(1), (5) (2007), as amended by 2007 Oregon Laws Ch. 71 (S.B. 84).

Section 164.095 defines theft by receiving. That section states: "A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft." Or. Rev. Stat. § 164.095(1) (2004).

[11]Oregon Revised Statutes § 164.055(1)(c) (2005) states: "A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and . . . [t]he theft is theft by receiving committed by buying, selling, borrowing or lending on the security of the property . . . ."

**[11]** Applying the *Blockburger* test, felon in possession of a firearm and possession of stolen property under Oregon law are separate offenses because they each require proof of an element that the other does not. Oregon's possession of stolen property has theft as an element, and felon in possession of a firearm has firearm possession as an element, both of which are different.

**[12]** Second, under Oregon law, possession of stolen property is not a firearms possession or trafficking offense. It does not contain firearms as an element. Although Valenzuela did possess several stolen firearms, that was not all the stolen property he possessed. He also stole several gun holsters, a gun case, a duffel bag, clothing, a wallet, a camcorder, a backpack, and other shooting equipment. Valenzuela's stolen property is fairly categorized as exactly that, stolen property, not simply stolen firearms.[12]

**[13]** Third, Valenzuela possessed the pistol grip shotgun in connection with the state felony of possession of stolen property. Valenzuela had the pistol grip shotgun underneath his seat, within ready reach. With the shotgun in this location, the district court could reasonably find that the shotgun emboldened his possession of the stolen property. We hold that the other felony offense of possession of stolen property was a proper state felony offense for the district court to use to enhance Valenzuela' sentence under § 2K2.1(b)(5).[13]

---

[12]Although the Government did not present any evidence at the sentencing hearing concerning the value of the stolen property, considering the long list of stolen items, including firearms, we are confident that the value of the stolen property well exceeded the $200 threshold required by Oregon Revised Statutes § 164.055(1)(a).

[13]Because we uphold the enhancement on the ground that Valenzuela committed another felony offense when he violated Oregon Revised Statutes § 164.055(1)(a), possession of stolen property, we need not address whether the second offense asserted by the Government as a basis for the enhancement, sale of stolen property, would also satisfy the test we have outlined above.

Our conclusion is reinforced by the comparable decisions of our sister circuits. Notably, in *Navarro*, a case applying a similar framework to the one we adopt here, the defendant was convicted of being a felon in possession of a firearm. 476 F.3d at 190. After his arrest, Navarro confessed to giving someone crack cocaine in return for the firearm he illegally possessed. *Id.* Based on this statement, the district court enhanced Navarro's sentence under § 2K2.1(b)(5) for the other felony offense of drug distribution, in violation of 21 U.S.C. § 841. *Id.* at 191 n.4. Applying a multi-part test, the Third Circuit held that the district court properly applied the four-level enhancement under § 2K2.1(b)(5). *Id.* at 196. First, the court applied the *Blockburger* test and determined that drug distribution and being a felon in possession of a firearm were separate offenses. *Id.* Next, the court asked whether the second felony offense, drug distribution, "constitut[ed] mere possession" of a firearm. *Id.* at 197 n.12. Because the offense of drug distribution only involved dispensation of drugs, "without the necessity of something being provided in return," Navarro's possession of the firearm in that transaction was not "an integral aspect of the offense." *Id.* at 197. Finally, the court reasoned that the presence of the firearm during Navarro's drug distribution facilitated or had the potential of facilitating the drug distribution. *Id.* Having satisfied these three questions in the Government's favor, the court upheld Navarro's sentence enhancement under § 2K2.1(b)(5). *Id.* at 197-98.

Here, as in *Navarro*, Valenzuela use of the shotgun to embolden his other felony offense of possession of stolen property satisfies our multi-part test. *See also United States v. King*, 341 F.3d 503, 506 (6th Cir. 2003); *United States v. Purifoy*, 326 F.3d 879, 881 (7th Cir. 2003); *Emerson*, 432 F. Supp. 2d at 139 (employing a multi-part test to determine if a sentence enhancement under § 2K2.1(b)(5) was proper).

## VII

We hold that in applying § 2K2.1(b)(5): (1) a district court should determine under the *Blockburger* test whether the

other felony offense proposed by the Government is a separate offense from the predicate felony offense. Next, the district court must decide if the defendant actively employed or possessed the firearm in a manner that emboldened or had the potential to embolden the other felony offense; (2) Application Note 15 prevents the use of firearms trafficking and possession offenses as "another felony offense" to enhance a defendant's sentence; (3) firearms trafficking and possession offenses necessarily contain the sale or possession of firearms as an element; and (4) the district court properly used § 2K2.1(b)(5) to enhance Valenzuela's sentence.

**AFFIRMED.**